## ALLEN *vs.* LITTLEFIELD.

A " settler," within the description given in the resolve of 1784, received from the Commonwealth a deed of a hundred acres of land, described as being the land on which he lived, but further described by metes and bounds which excluded a large portion of his actual possession.—It was held that the general language of the deed could not control the particular description, so as to include the whole of his possession; notwithstanding the declared intent of the legislature to quiet the settlers in their possessions.

The resolve of Massachusetts passed *Feb.* 18, 1829, authorizing its land agent to sell such small gores and tracts in Maine as might from time to time come to his knowledge, and evidently appear to belong to the Commonwealth, is sufficiently complied with if the agent knows of the general title of the Commonwealth to the tract sold, without having knowledge of its particular location or quantity.

THIS was a writ of entry on the demandant's own seisin, brought to recover possession of a small parcel of land in *Sanford.*

The premises were part of a larger tract formerly belonging to Massachusetts; by a resolve of which Commonwealth, passed *Feb.* 18, 1829, its land agent was authorized " to sell and convey, by deeds of quitclaim, all such small tracts or gores of land in the State of Maine, from time to time, as shall come to his knowledge, for the benefit of the two States of Massachusetts and Maine; provided it appears evident the same are owned by said States." And by a resolve of Maine passed *March* 3, 1829, the land agent of this State was authorized to join in conveyances with the agent of Massachusetts. On the 6th day of *July*, 1829, the two agents by deed conveyed to the demandant " all the right, title, interest and estate, be it what it may, which the said State and Commonwealth have in and to a certain tract or tracts of land in said town of *Sanford*, said

to contain about 12 acres, be the same more or less—without any recourse to either for any defect of title, or deficiency in quantity whatever."

The tenant proved that during the war of the revolution one *Jedediah Low* entered as a " settler" into a tract of land including the demanded premises, surrounding it by what was termed a " possession-fence," not sufficient to restrain cattle ; and built a house upon it, in which he dwelt. In *January*, 1785, he received a deed from from the agents of Massachusetts, conveying to him " a tract of land in *Sanford* described as " one hundred acres of land, be the same more or less, lying and being in said county of *York*, where he now lives, bounded," &c.—proceeding to a more particular description by metes and bounds, by which the demanded premises were not included. *Low* conveyed his land, by the same description, in *June*, 1785, to another person ; who in 1792, sold it in the same manner to the tenant. Soon after his purchase, the tenant caused the land to be surveyed according to *Low's* possession and claim ; and ever since continued to claim accordingly ; but suffered *Low's* old fence to decay, and every vestige of it to be effaced, without renewal.

It appeared that about the same time when the deed was given to *Low*, the agents of Massachusetts gave deeds to one or two other settlers on the same tract, conveying lots of a hundred acres ; and that these lots, and that of the tenant, when laid out by the description in their deeds, would interfere largely with each other ; but that the settlers had so adjusted their actual possessions as not to interfere, by extending them into the adjoining land.

On the part of the tenant it was contended that the deed from the Commonwealth to *Low* ought to be so construed as to pass to him the title to all the land he then claimed as above mentioned, although not included by the metes and bounds stated in the deed. It was also insisted that unless the demandant proved that the demanded premises had come to the knowledge of the land agent of Massachusetts, and had been made evidently to appear to him to be owned by the two States before he joined in the deed conveying the

same, he was not authorised to convey, and nothing passed by that deed.

But *Parris J.* before whom the cause was tried, instructed the jury that *Low* could take by his deed no more land than was included by the particular metes and bounds therein given ; and that title passed to the demandant by the deed to him, though the land agent had no knowledge, either before or at its execution, that the Commonwealth owned the particular tract demanded.

In the course of the trial the tenant offered the deposition of *George W. Coffin*, Esq. the land agent of Massachusetts, to prove that he had no such knowledge at that time ; to the admission of which the demandant objected ; but the objection was overruled. He testified that he believed the Commonwealth owned some land in *Sanford*, which he intended to convey ; but that he thought it was differently located.

The jury returned a verdict for the demandant ; and under particular instructions upon the point they found that Mr. *Coffin*, at the time he executed the deed, did not know that Massachusetts owned the particular parcel of land in controversy. And the verdict was taken subject to the opinion of the Court upon the question whether the demandant was entitled to recover.

*E. Shepley*, for the tenant, argued that it could never have been the intention of the Commonwealth to grant the same land to different persons ; nor to create conflicting titles ; but that its object evidently was to quiet the settlers in their several possessions, by deeds which should have that effect. Such was well known to be the general policy of the government. And to give it proper effect the deed to *Low* should be so construed as to include his possession, as part of the " hundred acres where he lived ;" rejecting the parts of the description inconsistent with it. *Worthington v. Hyllyer*, 4 *Mass.* 196 ; 2 *Wheat.* 321.

The agent of Massachusetts, he insisted, had no right to convey, but upon two conditions, both precedent in their nature ;—viz. first, that the particular tract should come to his knowledge ; without which he might be imposed upon in the price ; and secondly, that it should evidently appear that the Commonwealth owned the land ;

without which, embarrassments might be created by improper or unnecessary conveyances. *Banorgee v. Hovey*, 5 *Mass.* 11 ; 15 *Johns.* 1 ; *Stanwood v. Pierce*, 7 *Mass.* 460 ; *Albee v. Ward*, 8 *Mass.* 84 ; *United States v. Hayward*, 2 *Gal.* 485 ; *Tappan v. United States, ib.* 393 ; *United States v. Lyman, ib.* 504.

To the admissibility of *Coffin's* deposition, he cited *Fowle v. Bigelow*, 10 *Mass.* 384 ; *Leland v. Stone, ib.* 459 ; *Emery v. Chase*, 5 *Greenl.* 232.

*J. Holmes* and *D. Goodenow*, for the demandant.

WESTON J. delivered the opinion of the Court at the ensuing *May* term in *Cumberland*.

Whatever may have been *Low's* possession, under whom the tenant claims, through certain mesne conveyances, the deed he received from the agents of the Commonwealth of Massachusets, did not include the demanded premises. Had the transactions, which took place between them, related to the case of a proprietor other than the Commonwealth, *Low's* title to land commencing by disseisin not included in his deed, ought to be regarded as waived and abandoned. But no such claim could ever have affected the title of the Commonwealth. The general object of the legislature, indicated by the resolves upon which the tenant relies, was to quiet the settlers in their possessions ; and it is insisted that the particular description in *Low's* deed, ought to yield to this general intent. If the particular description conflicted with the general intent expressed in the deed ; as for instance if *Low* had lived upon a different lot from that described ; there might be something to sustain this argument. His deed conveyed to him one hundred acres of land where he then lived, described by lines clear, definite, and without ambiguity ; and he lived upon the lot so described. How it happened that these lines varied from his actual possession does not appear ; but his acceptance of the deed shows that it was satisfactory to him at the time ; and indeed he had great reason to be satisfied with the bounty of the government, extended to him not as a matter of right, but of favor. If the committee of the Commonwealth subsequently made

other grants conflicting with his, it could have no effect either to impair, enlarge, or vary the limits of his grant, which were distinctly and clearly expressed.

Without determining how far it was competent for the land agent of Massachusetts to testify what land he intended to convey to the demandant, we are of opinion that facts enough appear to sustain his authority, and that of the land agent of Maine. It came to their knowledge, and was evident to them, that the two States owned a small tract or gore of land in *Sanford*. And what appeared evident to them, has proved to be true in fact. This presents a case falling within the terms of the resolves upon which they acted, whether they were advised or not as to the actual location, or even if they believed it located in a different part of the town. They were induced to believe that the two States owned a small tract somewhere in that town, and they conveyed by terms, which would carry the land, wherever it might be found.

*Judgment on the verdict.*